IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

United States of America,          )
                                   )
                    Plaintiff,     )  Criminal Action
                                   )  No. 19-cr-374
vs.                                )
                                   )  Telephonic Status
George Nader - 2,                  )  Conference
Roy Boulos - 3,                    )
Mohammad Diab - 5,                 )  Washington, DC
Rani El-Saadi - 6,                 )  June 15, 2021
Stevan Hill - 7,                   )  Time:  11:00 a.m.
Thayne Whipple - 8,                )
                                   )
                    Defendants.    )
_____

TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE
HELD BEFORE
THE HONORABLE JUDGE RANDOLPH D. MOSS
UNITED STATES DISTRICT JUDGE
_____

A P P E A R A N C E S

For Plaintiff:      **Victor R. Salgado**
                    U.S. DEPARTMENT OF JUSTICE
                    1400 New York Avenue, NW, 12th Floor
                    Washington, DC 20005
                    (202) 353-4580
                    Email:  Victor.salgado@usdoj.gov
                    **Michelle Parikh**
                    DOJ-CRM
                    1331 F Street NW
                    Washington, DC 20005
                    202-353-0726
                    Email:  Michelle.parikh@usdoj.gov

For Defendant 2:    **Courtney Forrest**
                    KAISER DILLON PLLC
                    1099 14th Street, N.W.
                    8th Floor West
                    Washington, DC 20005
                    202-640-2850
                    Email:  Evoshell@kaiserdillon.com

```
 1     For Defendant 3:    Karen D. Williams
                           COZEN O'CONNOR
 2                         1200 Nineteenth Street, NW, Suite 300
                           Washington, DC 20036
 3                         (202) 304-1452
                           Email:  KWilliams@cozen.com
 4
       For Defendant 5:    Harland W Braun
 5                         HARLAND W. BRAUN
                           10880 Wilshire Boulevard
 6                         Suite 1020
                           Los Angeles, CA 90024
 7                         310-277-4777
                           Email:  Harland@braunlaw.com
 8                         Pleasant Sanford Brodnax, III
                           LAW OFFICE OF PLEASANT S. BRODNAX, III
 9                         1701 Pennsylvania Avenue, NW, Suite 200
                           Washington, DC 20006
10                         202-462-1100
                           Email:  Pleasant.brodnax@gmail.com
11
       For Defendant 6:    Megan Cunniff Church
12                         MOLOLAMKEN LLP
                           300 North LaSalle Street, Suite 5350
13                         Chicago, IL 60654
                           312-450-6716
14                         Email:  Mchurch@mololamken.com

15     For Defendant 7:    Edward B. MacMahon, Jr.
                           EDWARD B. MACMAHON, JR., PLC
16                         107 East Washington Street
                           Middleburg, VA 20118
17                         (540) 687-3902
                           Email:  Ebmjr@macmahon-law.com
18
       For Defendant 8:    George Allen Dale
19                         LAW OFFICES OF G. ALLEN DALE, PLLC
                           901 New York Avenue, NW, Suite 500 West
20                         Washington, DC 20001
                           (202) 638-2900
21                         Email:  Gallendale@aol.com
22     _____

       Court Reporter:          Janice E. Dickman, RMR, CRR, CRC
23                              Official Court Reporter
                                United States Courthouse, Room 6523
24                              333 Constitution Avenue, NW
                                Washington, DC  20001
25                              202-354-3267
```

```
 1          THE COURTROOM DEPUTY:  Good morning again, Your
 2   Honor.  This is criminal action 19-374, the United States of
 3   America versus George Nader, Roy Boulos, Mohammad Diab, Rani
 4   El-Saadi, Stevan Hill and Thayne Whipple.  Mohammad Diab is not
 5   appearing, as his presence had been waived.
 6          Appearing for the government, Victor Salgado and Michelle
 7   Parikh; appearing for defendant Nader, Courtney Forrest,
 8   standing in for Jonathan Jeffress and Emily Voshell; appearing
 9   for Roy Boulos, Karen Williams; appearing on behalf of
10   Mr. Diab, Harlan Brown and Pleasant Brodnax; appearing on
11   behalf of Rani El-Saadi, Megan Church; appearing on behalf of
12   Mr. Hill, who is present, Edward MacMahon, and; appearing on
13   behalf of Thayne Whipple, George Dale.
14          DEFENDANT DIAB:  I apologize.  This is Mohammad Diab.
15   I am present.
16          THE COURTROOM DEPUTY:  For the record, defendants, I
17   didn't name you as they did not file a waiver of appearance.  I
18   was making a specification regarding Mr. Hill, who was not
19   supposed to be present, but is present.
20          Your Honor, all the other defendants are present by
21   phone, with the exception of Mr. Diab.
22          THE COURT:  Okay.  Thank you.  Before I get going,
23   remind everybody it's not permissible to record or rebroadcast
24   these proceedings, and I'll order that nobody do so.  I'll ask
25   everyone mute your microphones when not speaking.  Please speak
```

```
 1    into your microphone when it's your turn.  And, also, please
 2    introduce yourself by name each time you speak so we have a
 3    clear record.
 4        We're here for a status conference, although I did have a
 5    couple of questions for counsel for Mr. El-Saadi and Hill
 6    relating to the pending venue motion.
 7        But why don't we just start with a check in on where
 8    things stand.  Who's speaking today on behalf of the
 9    government?
10            MR. SALGADO:  Victor Salgado, Your Honor.
11            THE COURT:  Okay.  Mr. Salgado, where do things stand
12    from your perspective?  Anything important to discuss?
13            MR. SALGADO:  Not much, Your Honor.  Just to try
14    to -- a quick update since the last status conference.
15    Obviously, Mr. Mann and Mr. Romano are no longer handling this
16    case for the government.  In their place, the government has
17    assigned myself and Ms. Parikh.  We are familiarizing ourselves
18    with the file.  We are mindful of the September 7th discovery
19    deadline and we will be ready to proceed to trial as scheduled
20    in December and, of course, meet the other deadlines, the
21    pretrial deadlines in October, November, as well.  Other than
22    that, Your Honor, the government doesn't have any further
23    updates.
24            THE COURT:  Okay.  And I think that time has been
25    tolled at this point, I believe, until the trial date, is that
```

1      right?

2              MR. SALGADO:  That's correct.

3              THE COURT:  All right.  Well, thank you.  Let me just

4      ask whether any of the defense counsel on the line have any

5      other issues they would like to rise today?  I could run

6      through it, in order.

7          Counsel for Mr. Nader?

8              MS. FORREST:  No.  This is Courtney Forrest.  We have

9      no issues, Your Honor.

10             THE COURT:  Okay.  Thank you.

11         And counsel for Mr. Boulos?

12             MS. WILLIAMS:  Your Honor, this is Karen Williams.

13     We have no issues to raise today.  Thank you.

14             THE COURT:  Okay.  Is Ms. Peterson on the line today?

15         (No response.)

16             THE COURT:  Okay.  And then counsel for Mr. Diab.

17             MR. BRAUN:  This is Harland Braun.  We would prefer a

18     day after Christmas.  He would like to spend Christmas with his

19     family in Los Angeles.  But, it's just our preference, so if

20     there's any way to go into next year, it would fine with us.

21             THE COURT:  You mean to push the trial off?

22             MR. BRAUN:  Yes, Your Honor.

23             THE COURT:  At this point I think we should leave it

24     where it is.  I think I have trials and other things scheduled

25     into the new year in a way that it would be hard to schedule,

1    looking at my calendar here.  I have trials scheduled in

2    January in a way which I think it's going to be hard to do that.

3         All right.  Anything further, Mr. Braun?

4              MR. BRAUN:  No, Your Honor.

5              THE COURT:  Ms. Church?

6              MS. CHURCH:  Good morning, Your Honor.  Megan Church

7    for Rani El-Saadi.  We have no issues to raise with the Court

8    today.

9              THE COURT:  Mr. MacMahon?

10             MR. MacMAHON:  Good morning, Your Honor.  Yes, Edward

11   MacMahon for Mr. Hill.  I don't have any other issues to raise

12   with the Court.

13             THE COURT:  All right.  And Mr. Dale?

14             MR. DALE:  Good morning, Your Honor.  This is Allen

15   Dale on behalf of Mr. Whipple.  Likewise, we have no issues to

16   raise today.

17             THE COURT:  Very good.  Did I miss anybody?

18        (No response.)

19             THE COURT:  All right.  The question I had,

20   Ms. Church, for you and Mr. MacMahon, is on the venue motion.

21   I guess I am tentatively of the view -- and I should stress

22   tentatively, because I haven't committed this to an opinion

23   yet -- but tentatively of the view that the crime of an

24   unlawful conduit contribution occurs when and where the

25   contribution is received.  What's complicated in this case is

1    the use of the joint fundraising committee, joint fundraising

2    effort.  And I don't know if you have any thoughts or anything

3    you would like to share about conceptually where the

4    contribution is received, where you have a joint fundraising

5    effort, and which is, I think, the language used in the

6    governing regulation that, as I understand under the

7    regulation, that there are both reporting requirements by the

8    joint fundraising committee, as well as by participating

9    committees.

10        As I understand it, conceptually what happens is when a

11   contribution is made to a joint fundraising committee or joint

12   fundraising effort, it is received by all of the participants

13   in that joint fundraising effort, and if one of those

14   participants is in the District of Columbia, does that mean

15   that the contribution is received?  And what further

16   complicates, as to my mind, is just the question of how banking

17   works and where funds are deemed to be located in a banking

18   system in which funds are fungible, and in some sense are more

19   an accounting mechanism than the actual transfer of dollars.

20        It's not as though the bank receives the money in a bank

21   in Nebraska, and X dollars there, puts in a truck and drives it

22   to D.C., puts it in a bank in D.C. -- I'm using Nebraska,

23   obviously, as an example, doesn't have any relation to this

24   case -- but if somebody makes a payment in Nebraska, there is

25   an accounting mechanism in which the funds are then treated as

1    deposited in the bank of the recipient, but the bank -- the

2    recipient may also be a national bank that could have offices

3    throughout the United States.  And so if you have any thoughts

4    that you want to share with me about how I perceive of where

5    the funds are actually received under these circumstances, I

6    would be delighted to hear that.

7              MS. CHURCH:  This is Megan Church on behalf of Rani

8    El-Saadi.  I think, you know, thinking through the question

9    that the Court has posed about, you know, the national banks

10   and having, you know, branches all over the country is making,

11   you know, this far more complicated than what actually happens

12   here, which is that a check was delivered and deposited outside

13   of this District, and then from there funds were transferred to

14   another bank that happens to be -- or, another entity whose

15   account happens to be in the District of Columbia.

16             From our perspective the deposit was accomplished -- you

17   know, the funds were received when they were deposited by the

18   initial recipient.  The transfers thereafter are secondary,

19   even in light of, you know, a joint fundraising mechanism.

20   When they -- the joint fundraising committee here certainly

21   could have had their accounts in Washington, D.C., they could

22   have, you know, mailed the check so that it could be deposited

23   by the entity in Washington, D.C., but that's simply not what

24   happened here.  And so, I would argue --

25             THE COURT:  Let me just interrupt for a second.  I

1   don't think the, at least, indictment alleges where the deposit

2   was made.  It doesn't say that the funds were then deposited at

3   a bank in Nevada.  And so I don't know that from, at least,

4   reading the indictment itself.

5           MS. CHURCH:  Certainly, Your Honor.  And I agree that

6   I don't think that that indictment specifies where the funds

7   were actually deposited.  But the government has not proffered

8   any evidence that they were deposited directly in Washington,

9   D.C., or by an entity located in Washington, D.C.  And

10  certainly, you know, the government can proffer such evidence

11  to make clear that this isn't just some sort of academic

12  exercise; that hasn't happened either.

13          THE COURT:  Okay.

14          MS. CHURCH:  I'm not aware of that.

15          THE COURT:  Anything else?

16          MS. CHURCH:  No, Your Honor.  Based on what we have

17  written, what we included in our motion, you know, we do

18  believe that the crime of receiving those illegal contributions

19  was complete, at the very latest, when Political Committee 2

20  deposited the check, not when the funds were subsequently

21  transferred to make sure that the other joint fundraising

22  committees received their portion of the fees.

23          THE COURT:  So maybe that's where I'm not entirely

24  convinced by your position at this point.  I still want to

25  think about it more.  I'm not sure that the way it actually

1    works, as a matter of FEC rules, is that the funds are then

2    received by the joint fundraising committee and then that

3    committee then engages in a separate distribution of the funds,

4    and until -- and that until that distribution occurs, under

5    your theory, that the political committee that is located in

6    D.C. does not receive the funds.  Because I think -- and I want

7    to look at it more carefully, but I think under the FEC

8    regulations the funds are received by the committee

9    simultaneously with their receipt by the joint fundraising

10   committee, because the joint fundraising committee is not

11   completely distinct from the individual committee made up of

12   the individual committees.  It is a joint fundraising effort.

13        So I think one way to think of it conceptually is as a

14   number of representatives of the constituent committees were

15   then receiving the funds at that moment in time.  The joint

16   fundraising effort has to issue, make a report, but that

17   doesn't mean that the funds are not received by the D.C.

18   committee at the moment that they are passed to the joint

19   fundraising effort, which then has lead me to my question of

20   what it means to receive funds in a world in which the banking

21   system is theoretical in many respects.

22        And, so, if the receipt of the funds is the deposit at a

23   bank somewhere, into an account of the joint fundraising

24   effort, and if that account is in some sense an account of the

25   individual committee, is that a receipt of the funds at that

1  moment in time?  And, if so, where are you?  I think by way of

2  analogy, perhaps one way to think about this is, if someone who

3  was sitting in California that then moves money to me, sitting

4  in my office, in my chambers here today, where were those funds

5  received?  Because Venmo probably has it -- I don't know where

6  Venmo's offices are and where the server is located, and my

7  bank is presumably located in every one of the 50 states, but

8  one might think of it naturally, in use of plain language, that

9  I'm sitting here in D.C. and, in fact, I received the $10 that

10 my friend in California Venmoed to me, and I received it here

11 in D.C.  And that's the conceptual question I'm trying to get

12 my head around.

13        MS. CHURCH:  Certainly.  If I may respond.  I think,

14 you know, part of the challenge here is we're talking about a

15 check that was written and deposited, versus, you know,

16 essentially wire transfers of funds.  I think it would

17 certainly be a fair argument to be made that you received the

18 funds in D.C. because you had access to them while you were

19 sitting in D.C. once they were Venmoed to you, and it was part

20 of a continuing process from when they are sent by Venmo to

21 your receipt of those funds for your use.

22        Here what we have is different in that a check was

23 deposited by, I believe, Political Committee 2, and before any

24 of the other joint fundraising committees had the ability to

25 access those funds, they had to be transferred by Political

1      Committee 2.  And I think you see that factually in the

2      government's opposition at page 3, I think in Note 1, they

3      acknowledge that contributions must be transferred to the

4      participating political committee after they're received by the

5      joint fundraising committee.  And it's also in the FEC's

6      website when it's describing itemized disbursements -- so this

7      is on page 9 of our reply brief, which is document 93 -- and

8      that website shows that Political Committee 2 disbursed funds

9      to various committees, meaning that the contribution was

10     accepted before the funds could be dispersed or transferred.

11          And so unlike, kind of, the theory that you've proposed,

12     as well as, I think, some of the cases the government cited, in

13     our view, to the extent that there was an acceptance, the

14     acceptance was completed at the time Political Committee 2

15     deposited those funds and not based on the subsequent transfer.

16     Particularly when we're talking about the deposit of a check

17     and not, you know, an individual wiring funds, which is then

18     more, you know, understandable that they're going to go through

19     various servers and, you know, fake channels before they're

20     ultimately received in their destination.  Here I think

21     factually it's quite distinct.

22               THE COURT:  Let me just test you a little bit on

23     that.  I want to make sure that I'm able to get my head around

24     this.  What you say makes sense to me if the joint fundraising

25     committee is a distinct political entity that receives funds

1   and then distributes funds and the funds of the participating

2   committees are not received until there is a further

3   distribution that occurs.  Maybe that's how it works here.

4   But, it's also possible -- one of the things I want to drill

5   down on and understand better, it's possible that there's not

6   really a separate political entity that constitutes a joint

7   fundraising committee, but what there is, is there's Committee

8   2 and any other participating committees in that joint effort.

9        And so, maybe it's a little bit like, you know, that I,

10   along with a couple of friends, are due some money and we have

11   a joint checking account and the money is deposited in our

12   joint checking account.  And it's true that we can't -- you

13   know, none of us can spend the money in the joint checking

14   until it's disbursed to our individual, personal checking

15   account because that's a matter of accounting, to make sure I'm

16   not spending my buddy's money, but it doesn't mean that I

17   haven't received the funds, because it really is a joint

18   checking account in which the funds were deposited.

19        MS. CHURCH:  I think the facts here are distinct from

20   that.  I don't think it was a joint checking account, I think

21   it was Political Committee 2's account from which defendants

22   then distributed funds to the various other committees that

23   were part of the joint fundraising committee.  And I think it's

24   also important to look at what the government said here, which

25   is, you know, they're saying venue is proper because Political

1        Committee 5 was located in this District when it received its

2        portion, not because it was part of this other, you know, joint

3        checking account scenario that, you know, Your Honor is

4        proposing.  It was located here when it ultimately received

5        some of the funds that had originally been deposited by

6        Political Committee 2.

7              And so there is a distinction also that if you're part of

8        a joint -- if you own part of a joint checking account and

9        there's an agreement that no one is going to actually take the

10       funds from that account, even though you're all collective

11       owners, until the funds are distributed, it's still very

12       different from what we have here, which is Political Committee

13       2 has the account from which it then sends money elsewhere.

14       And I think the fact that ultimately, for bookkeeping purposes,

15       everyone acknowledges receiving funds on the same day, doesn't

16       mean in actuality that's what happened.  Yes, maybe they were

17       transferred on the same day, but the one check had to be

18       deposited into one account before those funds could then be

19       transferred out.

20              THE COURT:  I guess what I'm at least potentially

21       disagreeing about, what I want to understand better, is you're

22       treating Committee 2 as though it is just an entirely distinct,

23       standalone campaign committee.  And the question I'm posing:

24       Is that right, or is Committee 2 really like any other

25       committee that is participating and there actually is an

1       assembly of committees that includes Committee 5?

2               MS. CHURCH:  I do think that Political Committee 2 is

3       somewhat distinct from Political Committee 5, that Political

4       Committee 5 -- it is a separate, kind of, entity onto itself.

5       And, frankly, that is how the government has alleged and

6       charged this and its basis for venue.  It's not that Political

7       Committee 5 received the funds, because it was part of the

8       joint fundraising committee, when those funds were deposited by

9       Political Committee 2.  According to the government, venue is

10      proper simply because it was located in the District when it

11      received a portion of the funds that Mr. El-Saadi had paid the

12      Political Committee 2.  So I think that there is a step

13      removed, even in how the government has alleged the facts here.

14              THE COURT:  Let me ask it this way, put the question

15      this way then:  Is it possible, in your view, where there is a

16      joint fundraising effort, where there, in fact, ever is a

17      separate conduit contribution made to Committee 5, or is that

18      just an impossibility?

19              MS. CHURCH:  I don't know that it's an impossibility.

20      I'm just trying to think through a factual scenario in which

21      there is a joint fundraising committee.

22          Well, certainly separate checks can be written, there can

23      be a joint fundraising committee, and an effort is to accept

24      checks on behalf of these various sub-political committees or

25      other number of political committees, where they hold the

1   fundraiser and say, you know, thank you so much for coming,

2   please write your check for $500 to Political Committee 1,

3   please write your check for $500 to Political Committee 2, and

4   so on and so forth.

5          THE COURT:  Yeah, I don't think that's a joint

6   fundraising effort then.

7          MS. CHURCH:  Well, if the goal is to get individuals

8   into the same location to raise funds for a variety of

9   candidates and, you know, campaign committees, that can be a

10  joint effort.  If the sole purpose of the joint fundraising

11  committee is to accept checks which it then disburses to

12  others, I would still say that that fundraising committee is

13  distinct from the various separate entities that are separate

14  political committees.

15         THE COURT:  I'm just not sure that that -- I mean, I

16  got to dig into that and understand that better as a matter of

17  the law, but I'm not sure what a joint fund -- if you look at

18  the regulations, there're actually not the same thing.  Joint

19  fundraising committee, it is called a joint fundraising effort,

20  and it is not as though the joint fundraising effort or the

21  joint fundraising committee itself engages in activities

22  intended to influence elections.

23      It exists simply for the purpose of coordinating the

24  process of fundraising among multiple committees.  And its

25  status, as I understand it, is an administrate means of

1    allowing campaigns, campaign committees to join together in

2    their efforts and to raise money together, but not as a

3    standalone thing that itself under FECA would be a political

4    committee because I don't -- I could be wrong about this -- but

5    I don't think the joint campaign committee itself extends funds

6    for purposes of political elections, it's just a mechanism by

7    which multiple campaign committees raise funds together.

8           MS. CHURCH:  And, Your Honor, we're going based, in

9    part, on what the government has alleged in the indictments,

10   where they, you know, describe Political Committee 2 and

11   Political Committee 5.

12          THE COURT:  And there clearly is a distinct -- there

13   clearly is a joint fundraising effort and a joint fundraising

14   committee.  It's kind of a common language, the way it's

15   referred to.  So I don't doubt that that fits and it actually

16   is subject to the campaign finance laws and various reporting

17   requirements that apply to it.  And I suppose there is a risk

18   that the conduit contribution would result in the joint

19   fundraising effort to make filing a false report with the

20   Federal Election Commission.  But, I'm just -- I mean, I just

21   need to study the regulations more on this.  And I'm happy, if

22   you want to submit anything else on this, I'm happy to read it.

23          MS. CHURCH:  Thank you, Your Honor.

24          THE COURT:  But it's not true that it is the same

25   thing as, by way of example, where the DNC and the RNC, for

1    example, I think, will accept campaign contributions and then

2    themselves will make contributions to the state Democratic and

3    state Republican campaign committees, but where, obviously, the

4    RNC, the DNC themselves are political committees.  But, I

5    think -- I think you know now, at least, what my concern is,

6    what I'm focusing on.

7         Let me see if Mr. MacMahon has anything else he wants to

8    add.  And I would like to see if the government has anything

9    they want to add on that.

10        MR. MacMAHON:  Thank you, Your Honor.  Edward

11   MacMahon for Mr. Hill.

12        Just briefly, I, obviously, adopted all of the arguments

13   that were in the other brief, which was very well done.  But I

14   would just urge the Court -- and I don't want to say you're

15   over-thinking it because that's not polite, but if you're

16   looking at the elements of the crime itself, which is where

17   venue comes from, is from an examination of the elements of the

18   crime, that's where the crime is, to make the contribution

19   essentially in the name of another person, and that is done

20   where the contribution is made.

21        The government brings these cases all over the country

22   when they want to, and there's cases that they bring in

23   California and cases they bring in Virginia, generally where

24   the fundraiser was held, because it's obvious that that's a

25   place where jurisdiction for one of these charges can be made.

1    And with these fundraisers being held in California and other

2    places, the government's really had to twist logic and get you

3    reading, you know, FEC regulations to try to figure out what

4    actually happened, when under the elements of the statute

5    itself, it's the giving of the donation which is the element

6    willfully done which gives rise to the crime.  So --

7              THE COURT:  Where does that -- where did that occur?

8              MR. MacMAHON:  Where the -- if they were in

9    California and a check was handed over to somebody and then

10   they received another check in California, it would be exactly

11   there; where the fundraiser was held.  If there's a case --

12             THE COURT:  It wasn't held in California, was it?

13             MR. MacMAHON:  There were events held in California.

14   I believe that most of the checks were received by Mr. Khawaja

15   in California.  But in Mr. Hill's case, I believe there's an

16   allegation that he went to Nevada at one time, so it could have

17   happened in Nevada.  But as I say, I've had these cases before

18   and they're held where the fundraisers occurred, and that's the

19   simple answer to where the donation was made.  And there's no

20   examination of how money flows through banks and what FEC

21   regulations say and otherwise.  Doesn't mean they can't try,

22   but I think that the answer, from the elements of the charge,

23   is that that is the answer to the question.

24             THE COURT:  Right.  Well, I mean, I do -- you

25   certainly are correct, at least in my view, that the crime

1   occurs where the contribution is received.  What I'm trying to

2   just do is understand where the contribution is actually

3   received, and I don't think the indictment actually says where

4   it was received.  And perhaps that's a question for the jury, I

5   don't know.

6          Let me see if the government has any thoughts on this

7   question.  Mr. Salgado?

8          MR. SALGADO:  Yes, I do, Your Honor.  Just very

9   briefly.  Let me start by noting that none of the arguments

10  that defendant El-Saadi made and that were adopted in full by

11  defendant Hill apply to Counts 27 and 41, that -- in which

12  defendant Hill was charged.  So let's start there, so that we

13  are clear about what we're talking about.

14         We're only talking about, as far as joint fundraising

15  effort goes, Count 18, vis-à-vis defendant El-Saadi, and Count

16  19, vis-à-vis defendant Hill.  Your Honor, the government does

17  not disagree with the Court's understanding of the dynamics

18  here, that's our understanding as well, that, you know, a joint

19  fundraising effort is essentially constituent members coming

20  together and putting this effort forward and, therefore, the

21  way the Court is conceptualizing the issue, in the government's

22  view, is correct.

23         THE COURT:  So, fair enough.  But, let me ask you

24  this:  Assume that's all right and that the joint fundraising

25  committee is really an agent of all the political committees

1    and that the component committees do receive the contributions

2    when and where it's I received by the joint fundraising

3    committee.  If in fact someone, a representative from the joint

4    fundraising committee received the check in Nevada or in

5    California, why would that mean that both the joint fundraising

6    committee and the D.C. committee received the check in

7    California or Nevada?

8       In other words, set aside -- taking this for advance

9    point, maybe it is more -- the concept of what a joint

10    fundraising committee is is more subtle than the parties have

11    pleaded, and you need to read the FEC regulations to understand

12    that, but at the end of the day, if it's too much, and too

13    subtle to start asking how the banking laws work -- I mean, if

14    someone handed someone a check and that person took the check,

15    and either where that check passed hands or it's where the

16    check is then deposited to the bank, but it's not every bank

17    account in the country or every location in the country where

18    someone might be able to withdrawn those funds.

19       MR. SALGADO:  Our position -- and, Your Honor, to the

20    extent that defendant El-Saadi files something, of course, we

21    would appreciate an opportunity to respond in detail.  But our

22    view is that the contribution was received where the entity

23    that has custody and control over the contribution was located.

24    In this case it would be Political Committee 5 in the District

25    of Columbia.  You know, they are the ones who have the ability

1    to expend those funds for political advocacy, for political

2    process, et cetera, et cetera.  Whoever that person is out in

3    California, you know, who physically received the check, it

4    doesn't have that authority, therefore, to say that that is the

5    person who received the contribution, would gloss over the more

6    important and meaningful fact here, which is that it's the D.C.

7    entity that has effective custody, control over those funds.

8              THE COURT:  But, I sort of understand that argument

9    with respect to receipt and the separate crime of receiving

10   funds unlawfully, but if the contribution itself -- I mean, I

11   am struggling a little bit with this, and I've read the

12   materials and the cases that you all have cited on this, I

13   don't think -- if anything, there's a Third Circuit case that

14   supports the defendant's view here, that it's where the

15   interest is located who actually receives the check.

16        But I'm happy to give the parties an opportunity to, you

17   know, in short order do additional briefs.  I want to do it

18   relatively soon because I'm freshly thinking about it and I

19   don't want to have to pick it up two months from now and have

20   to get back up to speed again on it.

21        But, you if want to make the point and demonstrate to the

22   Court that if payment is being made at the place in which the

23   recipient resides and accesses the funds, you're going to have

24   to point me to some law by analogy, in bank fraud cases or

25   something else to support the proposition that a crime occurs

1    not where the check passes, not where the check is deposited,

2    but where the entity resides that is the recipient of the

3    check.  There may be case law that supports that, but no one

4    has pointed me to that thus far.

5              MR. SALGADO:  Okay.

6              THE COURT:  Okay.

7              MR. SALGADO:  No problem, Your Honor.

8              THE COURT:  Do you want to submit -- Miss Church, do

9    you want to submit anything further on this topic?

10             MS. CHURCH:  Yes, Your Honor.  We would like the

11   opportunity to submit something further.

12             THE COURT:  Okay.  When do you think you can do that

13   by?  I want to do this relatively quickly because I don't want

14   to put this aside and then have to pick it back up.

15             MS. CHURCH:  Certainly, Your Honor.

16             THE COURT:  A week or so?

17             MS. CHURCH:  I think in a week or so it's possible.

18   If we may have until the end of next week, until June 25th?

19   Would that be possible, Your Honor?

20             THE COURT:  That's certainly reasonable.  I'll give

21   you until June 25th, and then I'll give the government until

22   July 2nd to file something in response.  And that's only a

23   week, the government can be working on that and get going on

24   this before the receipt of the papers.  So I think a week

25   should be sufficient.  And then I'll get an opinion on this

1    promptly afterwards and then we can move forward.

2              Anything else that anyone else wants to raise today?

3    This was helpful.  Thank you.

4              MR. BRODNAX:  Yes, Your Honor.  Good morning.  Your

5    Honor, this is Pleasant Brodnax on behalf of Mr. Diab.

6              THE COURT:  Good morning.

7              MR. BRODNAX:  Yes.  Yes, thank you, Your Honor.  Your

8    Honor, Mr. Braun had earlier filed a waiver of appearance for

9    Mr. Diab, which I think the Court granted on May 28th.  I just

10   wanted the Court to be aware and the record to reflect that

11   Mr. Diab did announce his presence at the beginning of the

12   call, so he has been present for the entire hearing.

13             THE COURT:  Yes, I think the deputy clerk did note

14   that for the record.  But thank you for pointing that out as

15   well.

16             MR. BRODNAX:  Thank you, Your Honor.

17             THE COURT:  All right.  Well, thank you all.  And as

18   I said, after I get the materials, I will get the opinion out

19   promptly.  But if anything comes up where you need the Court's

20   attention, just let me know.

21             MS. CHURCH:  Thank you, Your Honor.

22             MR. MacMAHON:  Thank you, Your Honor.

23             THE COURT:  Thank you all.

24                              *   *   *

25

1

2                    CERTIFICATE OF OFFICIAL COURT REPORTER

3

4        I, JANICE DICKMAN, do hereby certify that the above and

5    foregoing constitutes a true and accurate transcript of my

6    stenographic notes and is a full, true and complete transcript

7    of the proceedings to the best of my ability.

8                        Dated this 16th day of June, 2021

9

10

11                    _____

12                        Janice E. Dickman, CRR, CMR, CCR
                         Official Court Reporter
13                       Room 6523
                         333 Constitution Avenue, N.W.
14                       Washington, D.C.  20001

15

16   This hearing was held telephonically in compliance with the
     COVID-19 pandemic stay-at-home orders and is, therefore,
17   subject to the limitations associated with the use of current
     technology, including but not limited to telephone signal
18   interference, static, signal interruptions, and other
     restrictions and limitations associated with remote court
19   reporting via telephone, speakerphone, and/or
     videoconferencing.

20

21

22

23

24

25